UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RESAT KELES,

         Plaintiff,

         <u>OPINION AND ORDER</u>

- against -         15-cv-03880 (NG)

BURL YEARWOOD and
LAGUARDIA COMMUNITY COLLEGE,

         Defendants.
------------------------------------------------------------x

GERSHON, United States District Judge:

  Plaintiff Resat Keles brings this action, asserting federal question and supplemental jurisdiction, pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8–101 *et seq.*, and state contract law. He asserts a number of parallel claims under each of the three anti-discrimination statutes, while other of his claims he brings under only certain of the statutes. Under the ADEA, NYSHRL, and NYCHRL, plaintiff claims that defendant LaGuardia Community College ("LCC" or "the College") unlawfully discriminated against him based on his age in failing to hire him for a full-time faculty position and, later, in failing to assign him any courses as an adjunct professor at the College. Under the ADEA and NYSHRL only, he further claims that, by failing to assign him any courses to teach as an adjunct professor, the College retaliated against him for submitting a discrimination complaint to his union. Under the NYCHRL only, he claims that defendants interfered with a protected right he enjoys under the City Human Rights Law and that defendant Yearwood aided and abetted the College's

discrimination against him in its hiring for the full-time position. Plaintiff also claims that the College breached its contract with him after appointing him as an adjunct professor.

Defendants move to dismiss all of Mr. Keles's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) except for his claim under the ADEA that the College discriminated against him based on age by not hiring him for a full-time faculty position. While they seek dismissal of all state and local law claims for failure to comply with New York Education Law § 6224, they do not seek dismissal on the merits of Mr. Keles's claims under the NYSHRL and NYCHRL that the College discriminated against him based on age by not hiring him for a full-time faculty position, nor of his claim under the NYCHRL that Yearwood aided and abetted LCC's age discrimination in hiring for the full-time position.[1] For the reasons set forth below, defendants' motion is granted in part and denied in part.

## FACTS

The following facts alleged in the Amended Complaint and documents incorporated by reference are taken as true for purposes of this motion.

Between April 2009 and September 2012, plaintiff was employed as an adjunct professor in the Natural Sciences Department at LCC, a two-year public college that is part of the City University of New York system. Am. Compl. ¶ 7, 9, 14, 22. Plaintiff, who was sixty-six years old at the start of this lawsuit, has a PhD and multiple other graduate and undergraduate degrees in

---

[1] At oral argument on March 29, 2017, plaintiff agreed to withdraw his employer liability claim under the NYCHRL, as well as his tortious interference claim. Although the docket entry for the hearing recites that plaintiff also agreed to dismiss his "aiding and abetting" claim (claim number 8), upon further review, this overstates what plaintiff withdrew. Plaintiff's agreement to withdraw claims was directed only at claims that were the subject of the motion to dismiss on the merits. Defendants did not move to dismiss on the merits the aiding and abetting claim against Yearwood for his involvement in the failure to hire plaintiff for the full-time position. Accordingly, that portion of plaintiff's claim was not withdrawn.

engineering, science, mathematics, and business administration. *Id.* ¶ 13. Defendant Yearwood was and still is the Chairman of the Natural Sciences Department at LCC. *Id.* ¶ 8. Plaintiff taught courses at LCC from the time when he was first hired until the Spring 2012 semester. *Id.* ¶ 16, 22. Each semester, plaintiff's supervisor at LCC would provide plaintiff with a letter that offered to reappoint him to teach courses as an adjunct professor the following semester. *Id.* ¶ 16. In the Spring 2012 semester, Peter Katopes, the Vice President of Academic Affairs, again provided plaintiff with a reappointment letter for the following, Fall 2012 semester. *Id.* ¶ 14. The letter, addressed to plaintiff, read, in relevant part:

> LaGuardia Community College intends to reappoint you as an Adjunct Professor in the Natural Sciences Department for the Fall 2012 semester. You will be paid based on an hourly rate of $107.04…. Appointments will be offered subject to sufficiency of registration, financial ability, curriculum needs and scheduling. Department chairpersons will confirm appointments upon completion of registration…. Please indicate your acceptance by signing and returning this copy of the appointment letter to Human Resources in Room E-408.

Pl.'s Decl. in Opp'n to Mot. to Dismiss, Ex. F. At the bottom, the letter called for plaintiff to sign and date the letter underneath a sentence that read: "ACCEPTANCE: I hereby accept the terms of appointment as stated above." *Id.* The letter was signed by Mr. Katopes. Plaintiff signed and dated the letter and returned it to the human resources department as called for in the letter. Am. Compl. ¶ 15.

That same semester, plaintiff applied for a full-time associate professor position at LCC that had become available. *Id.* ¶ 26. Despite his qualification for the position, plaintiff alleges, LCC hired a less qualified person who was under the age of forty at the time. *Id.* ¶ 28–29. Plaintiff points to a number of indicators that suggest that he was not hired because of his age. For example, during his interview for the position, one of the interviewers asked plaintiff "How do you write grants at this age?" and told him that "Your old methods don't work." *Id.* ¶ 35–36. There were also

a number of apparent irregularities in the interview process for the position. Candidates for the position were interviewed by several interviewers, each of whom wrote an evaluation of the candidate's presentation and gave a recommendation. *Id.* ¶ 35–40. One interviewer's written recommendation with respect to plaintiff was whited out; over it was written "Do Not Recommend" in defendant Yearwood's handwriting. *Id.* ¶ 40. Then, in the same interviewer's evaluation of another candidate, the original recommendation was also whited out; over that recommendation was written "Recommend," also in Mr. Yearwood's handwriting. *Id.* ¶ 41. Moreover, outside the interview context, plaintiff alleges that he would often overhear conversations around the Natural Sciences Department office disparaging older adjunct professors. *Id.* ¶ 44. For example, he overheard one administrator in the department, who was also one of plaintiff's interviewers for the associate professor position, disapprovingly talking about "these old adjuncts." *Id.*

A few months after being denied the full-time faculty position, plaintiff was also informed that he would not be assigned any courses to teach as an adjunct professor the following semester, even though there were a number of courses offered by the College that he could have taught. *Id.* ¶ 52. These courses were instead assigned to four other, younger professors, all under the age of 40. *Id.* ¶ 53. On August 10, 2012, plaintiff complained to his union representative regarding age discrimination. *Id.* ¶ 46. On September 6, 2012, plaintiff's union filed a formal complaint with the College for improper rescission of plaintiff's Fall 2012 appointment as an adjunct professor without just cause and age discrimination based on plaintiff's August 10 complaint. *Id.* ¶ 47. There are no allegations that plaintiff or his union took any action to alert anyone at LCC of plaintiff's complaints until that formal complaint was lodged on September 6. Plaintiff was never again assigned any courses at LCC to teach as an adjunct professor. *Id.* ¶ 51.

On September 21, 2012, plaintiff completed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") in which he complained of age discrimination because he was not hired for the associate professor position and not assigned courses to teach as an adjunct professor *Id.* ¶ 49. On October 19, plaintiff filed a Charge of Discrimination with the EEOC, where he supplemented his original allegations with an allegation of retaliation against him. *Id.* ¶ 50. Plaintiff's EEOC complaint was served on LCC on December 5, 2012. *Id.* ¶ 5. His notice of claim was served on LCC on July 18, 2013. Pl.'s Decl. in Opp'n to Mot. to Dismiss, Ex. C. Plaintiff brought this lawsuit no more than ninety days after receiving his notice of right-to-sue from the EEOC. Am. Compl. ¶ 6.

## DISCUSSION

### I. Standard of Review

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360-61 (2d Cir. 2011). The court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The court may consider the pleading itself, as well as "any documents which are incorporated into the complaint by reference, or upon which the complaint relies so heavily that it is rendered integral to the pleading." *Alexander v. City of New York*, 957 F. Supp. 2d 239, 245

(E.D.N.Y. 2013) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002)). Both plaintiff and defendants have submitted the Reappointment Letter which plaintiff alleges forms the basis for his contract with LaGuardia Community College. Defendants have also submitted the September 6 union complaint, which the complaint references. As documents referenced in the complaint and integral to the pleading, I will consider these documents in deciding this motion to dismiss.

## II. Compliance with New York Education Law § 6224

Defendants argue that all of plaintiff's city and state claims are barred for failure to file a timely notice of claim pursuant to New York Education Law § 6224(1). State notice of claim requirements apply to state claims in federal court. *DeCarolis v. Town of Vienna*, 322 F. App'x 25, 26 (2d Cir. 2009). However, for the reasons set forth below, I find that § 6224(1) applies only to tort claims.[2]

Section 6224(1) incorporates the notice of claim requirements of General Municipal Law §§ 50-e and 50-i. Section 50-e "provides the procedural mechanism for filing a notice of claim when required," and § 50-i "sets forth the kinds of actions which will trigger the requirement to

---

[2] Plaintiff, incorrectly, asserts that he filed a notice of claim, or an appropriate substitute, within ninety days of the accrual of his claims as required by § 6224(1). Plaintiff served his notice of claim on LCC on July 18, 2013 and his EEOC complaint – which he maintains can substitute for a notice of claim – on December 5, 2012. Plaintiff argues that his claims accrued as of the Spring 2013 semester when LCC failed to extend him a reappointment offer to serve as an adjunct professor as LCC had done every previous semester. As I explain in further detail below, when I discuss plaintiff's retaliation claim, LCC was under no obligation to offer plaintiff employment. Therefore, his latest valid claim accrued when LCC failed to assign him courses to teach as an adjunct professor sometime on or before August 10, 2012. Accordingly, even if an EEOC complaint could substitute for a notice of claim, plaintiff's claims for breach of contract, age discrimination, and Fall 2012 retaliation all accrued more than 90 days before the EEOC Complaint was served on LCC.

provide a municipality with a notice of claim." *Mills v. Monroe County*, 89 A.D.2d 776, 776 (4th Dep't 1982). Section 50-e states that "in any case founded upon tort" against a public corporation, or any of its officers, appointees, or employees, a plaintiff must serve a notice of claim on the public corporation within 90 days after the claim arises. Section 50-i provides that the tort actions that trigger the notice of claim requirement are actions for "personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of… negligence or wrongful act." The New York Court of Appeals has held that "[h]uman rights claims are not tort actions under section 50–e and are not personal injury, wrongful death, or damage to personal property claims under section 50–i," so that "a notice of claim need not be filed for a Human Rights Law claim against a municipality." *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 727, 730 (2015). The Court further stated that it "[did] not perceive any reason to encumber the filing of discrimination claims." *Id.* at 730.

In my view, the plain language of New York Education Law § 6224(1) establishes that its notice of claim requirement also applies to torts alone. Section 6224(1) provides that:

> The provisions of sections fifty-e and fifty-i of the general municipal law shall, notwithstanding any inconsistent provision of law, continue to apply to actions and proceedings based on a cause of action involving a community college of the city university of New York or an officer, agent, servant or employee of such community college acting in the course of his employment.

The language of § 6224(1) that §§ 50-e and 5-i "shall… continue to apply" evidences that the legislature intended to maintain the status quo ante. Prior to the enactment of § 6224(1) in 1979, filing a notice of claim in suits against a community college was required only as to claims based on "negligence, resulting in personal injury or property damage" by community college employees acting within the scope of their employment. Act of Apr. 10, 1957, ch. 315, § 1, 1957 N.Y. Laws 1027–28 (codified as N.Y. Educ. Law § 6308) (repealed 1980). In 1979, the New York legislature

7

enacted a major rewriting of the Education Law. *See generally* Act of June 27, 1979, ch. 305, §§ 1–10, 1979 N.Y. Sess. Laws 667–705 (McKinney). Section 6224(1) was meant to maintain the prior requirement that plaintiffs in tort actions against community colleges comply with § 50-e's notice of claim requirements.

Two courts have read § 6224(1) more broadly, to apply to any type of claim against a community college. *See Washington v. Borough of Manhattan Cmty. College*, 2016 WL 7410717, at *2 (S.D.N.Y. Dec. 21, 2016); *McKie v. LaGuardia Cmty. Coll./CUNY*, 85 A.D.3d 453, 453–54 (1st Dep't 2011). In my view, the conclusion of these courts that there is a notice of claim requirement for a broader class of cases than torts is without support in the plain language and statutory history of § 6224(1).

Contrasting the language of § 6224(1) with that of similar New York statutes that incorporate § 50-e lends further support to my reading of the statute. County Law § 52 provides that:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law.

Section 52 devotes many lines to make it clear that the notice of claim requirements of § 50-e apply to claims "of every name and nature." Town Law § 67, more succinctly but also clearly, incorporates § 50-e's notice of claim requirement as to all types of claims:

> Any claim including a claim specified in section sixty-five-a of this chapter which may be made against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person, shall be made and served in compliance with section fifty-e of the general municipal law.

Both County Law § 52 and Town Law § 67 have been held to require a notice of claim for discrimination claims. *Picciano v. Nassau County Civ. Serv. Comm'n*, 290 A.D.2d 164, 170–71 (2d Dep't 2001); *Sager v. County of Sullivan*, 145 A.D.3d 1175, 1175 (3d Dep't 2016). In fact, it was precisely these statutes that the Court of Appeals referenced in *Margerum* when it stated that "'[s]ervice of a notice of claim is therefore not a condition precedent to commencement of an action based on the Human Rights Law in a jurisdiction where General Municipal Law §§ 50–e and 50–i provide the only notice of claim criteria.'" *Margerum*, 24 N.Y.3d at 730 (quoting *Picciano*, 290 A.D.2d at 170); *see also Margerum*, 24 N.Y.3d at 730 (Read, J. concurring) ("We have held that an employment discrimination claim brought against a county under the Human Rights Law is subject to County Law § 52(1)'s notice-of-claim requirement.") (emphasis omitted). In contrast, § 6224(1) simply states that § 50-e "shall... continue to apply" to actions involving community colleges. Unlike County Law § 52 and Town Law § 67, § 6224(1) does not provide additional "notice of claim criteria." *Margerum*, 24 N.Y.3d at 730. In sum, plaintiff's state and city discrimination and breach of contract claims are not barred under § 6224(1), because he was not required to file a notice of claim within 90 days of the accrual of these claims.

Defendants also argue that plaintiff failed to comply with § 6224(2), which provides that:

> No action or proceeding based on a cause of action involving a community college of the city university of New York or an officer, agent, servant or employee of such community college acting in the course of his employment may be prosecuted or maintained unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since a demand setting forth the underlying basis for such matter was presented to the city university for adjustment, and that the officers or bodies having the power to adjust or pay such demand have neglected or refused to make an adjustment or payment thereof for thirty days, after such presentment.

Defendants do not dispute that plaintiff, in fact, allowed at least thirty days to elapse from the time he provided the College with a demand and that it neglected or refused to pay it,[3] but they argue that plaintiff failed to *plead* his compliance with the statute as required. However, the statute requires that compliance "appear by and as an allegation in the complaint *or necessary moving papers*." Section 6224(2) (emphasis added). Here, plaintiff and defendants have attached plaintiff's demand as exhibits to their motion papers. Accordingly, plaintiff has met the requirements of § 6224(2).

### III. Plaintiff's Claim of Discrimination by LCC in Failing to Reappoint Him as an Adjunct Profession

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016). Because the New York courts have not yet decided whether the same standard applies to NYSHRL claims, the Second Circuit "ha[s] assumed, without deciding, that the ADEA's 'but for' standard of causation also applies to age discrimination claims brought under the NYSHRL." *Mikinberg v. Bemis Co., Inc.*, 555 F. App'x 34, 35 (2d Cir. 2014)). However, "claims under the NYCHRL are to be evaluated separately from federal and state law claims and given liberal, independent construction." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 101 (2d Cir. 2014). Under the NYCHRL, a plaintiff need allege only that discrimination was a motivating factor for the adverse employment action. *Twomey v. Quad/Graphics, Inc.*, 2015 WL 5698002, at *8 (S.D.N.Y. Sept. 28, 2015) (citing *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127 (1st Dep't 2012)).

---

[3] Defendants acknowledged receipt of plaintiff's demand on July 18, 2013. This action was commenced on July, 2 2015.

Defendants acknowledge that plaintiff has alleged sufficient facts to support his age discrimination claim with respect to LCC's decision not to hire him for a full-time faculty position. However, they argue that plaintiff has not met his burden with respect to his second discrimination claim, predicated on the decision not to assign him courses to teach as an adjunct professor, because he bases his claim solely on the allegation that younger professors were assigned the courses he could have taught. However, in addition to that allegation, plaintiff also alleges that he not infrequently heard statements disparaging professors for their age in the Natural Sciences Department. For example, he overheard statements by an administrator in the department disapprovingly referring to "these old adjuncts."

In addition, plaintiff alleges that, in his interview for the full-time position, he was asked "How do you write grants at this age?" and told "Your old methods don't work." He was then denied the position. Although these allegations relate to his application for the full-time position, they plausibly support an inference that age animus infected all of the department's hiring decisions with respect to plaintiff. Both the full-time and adjunct positions that plaintiff sought are within the same department, and the decisions to reject him for both positions were made close in time, only a few months apart. It is at least plausible that, in such a relatively small environment, some of the same people who exhibited age animus during the full-time hiring process were also involved in the decision-making process about adjunct faculty assignments. Plaintiff's allegations as a whole sufficiently support his claim that his age was a motivating factor, and even a but-for cause, in LCC's decision not to assign him courses to teach.[4]

---

[4] Defendants also argue that plaintiff's claim is implausible because LCC was still communicating with plaintiff about the possibility of assigning him a course a month before the beginning of the semester, attaching the email exchange as proof. First, defendants' exhibit is not part of, integral to, or referenced in the complaint. Therefore, I cannot consider it in ruling on this motion. *City of*

### IV. Plaintiff's Claim of Retaliation by LCC in Failing to Reappoint Him As an Adjunct Professor

A plaintiff asserting a retaliation claim must allege that his employer took an adverse employment action against him because he complained of discrimination. *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41–42 (2d Cir. 2012). Therefore, a plaintiff whose retaliation claim is based on adverse actions which took place before the defendant became aware of the protected activity "cannot make out an essential element of a retaliation claim." *Bakalova v. Maimonides Med. Ctr.*, 83 F. App'x 372, 375 (2d Cir. 2003). Here, LCC first learned of plaintiff's age discrimination complaint on September 6, 2012, when his union filed a written grievance with the school on his behalf. The grievance charged LCC with improperly rescinding his appointment for the fall semester and age discrimination. Therefore, according to plaintiff's own grievance, LCC had already rescinded his Fall 2012 appointment before it became aware that he complained of age discrimination. Accordingly, plaintiff cannot establish that LCC rescinded his Fall 2012 appointment because of his protected activity.

Plaintiff argues that, even if LCC did not retaliate against him that semester, it retaliated against him in subsequent semesters by never again approaching him with a reappointment offer for the position. But plaintiff did not apply for the position in any subsequent semester. It is true that, previously, LCC had approached him prior to each semester with an offer to reappoint him as an adjunct professor. But plaintiff's argument misunderstands the burden here, placing the onus on LCC to seek him out as an employee – seemingly indefinitely. Under plaintiff's theory, LCC's prior practice of offering him employment each semester would establish a burden on it to continue

---

*New York*, 957 F. Supp. 2d at 245. Moreover, the mere fact that LCC communicated with plaintiff about assigning him a course before rejecting him simply does not make it implausible that LCC chose not to assign him any courses because of his age.

doing so without end. It had no such obligation. In sum, plaintiff has failed to allege that LCC took any adverse action against him in subsequent semesters. Accordingly, defendants' motion to dismiss plaintiff's retaliation claims in their entirety is granted.

## V. Plaintiff's Breach of Contract Claim

Defendants argue next that plaintiff's breach of contract claim must be dismissed because the parties never signed an enforceable contract. Defendants articulate two reasons for their position. First, defendants argue that the alleged contract is invalid as illusory or too indefinite. They point out that the letter states that LCC "intends" to reappoint plaintiff, that no specific class is mentioned in the agreement, and that actual appointments are conditioned on a number of factors.

As to the claim that the contract is illusory, "[u]nder New York law, courts should avoid a contractual interpretation that renders an agreement illusory and unenforceable for lack of mutual obligation." *LaRoss Partners, LLC v. Contacts 911 Inc.*, 2015 WL 2452616, at *10 (E.D.N.Y. May 21, 2015) (internal quotation marks omitted). It is "settled" New York law that courts "will not adopt an interpretation that renders a contract illusory when it is clear that the parties intended to be bound" by the agreement. *Id.* (internal quotation marks omitted); *accord Lebowitz v. Dow Jones & Co., Inc.*, 847 F. Supp. 2d 599, 604 (S.D.N.Y. 2012). Moreover, while a contract is not legally enforceable if it is too indefinite, an "agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy." *Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 61 (1st Dep't 2015). For a contract to be sufficiently definite, the agreement must be "reasonably certain" such that a court "is able to determine what in fact the parties have agreed to." *In re. 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp*, 78 N.Y.2d 88, 91 (1991); *accord Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 609 (S.D.N.Y. 2010). However, courts should

not "appl[y] the definiteness doctrine rigidly" where it would "defeat the underlying expectations of the contracting parties." *In re. 166 Mamaroneck Ave. Corp.*, 78 N.Y.2d at 91.

Here, the reappointment letter called for plaintiff to "indicate your acceptance by signing and returning" the letter. Then, right above the line for plaintiff to sign and date the letter, indicating his acceptance, the letter reads: "ACCEPTANCE: I hereby accept the terms of appointment as stated above." The letter was signed and dated by plaintiff and by LCC's representative, its Vice President of Academic Affairs. Based on this letter, plaintiff has sufficiently alleged that the parties intended to be bound by the agreement. I cannot read the language in the agreement stating that LCC "intends to reappoint" plaintiff, the lack of specificity as to courses, or the existence of conditions such as "sufficiency of registration, financial ability, curriculum needs and scheduling" as rendering the contract illusory or indefinite. *See LaRoss Partners, LLC.*, 2015 WL 2452616, at *10; *In re. 166 Mamaroneck Ave. Corp.*, 78 N.Y.2d at 91. The agreement spells out what conditions must be met for plaintiff to be assigned classes. Finally, outside the four corners of the agreement, plaintiff's expertise, teaching experience at LCC, and past dealings with the College may provide further context for the terms of the agreement. These are questions of fact better addressed on summary judgment, and not on this motion to dismiss.

Next, defendants argue that there was no contract because the conditions to plaintiff's reappointment were conditions precedent to formation of the contract and not, as plaintiff argues, to performance. This issue depends on the intent of the parties as discerned from the language of the contract. *See Garrett v. Music Pub. Co. of Am., LLC*, 740 F. Supp. 2d 457, 462–63 (S.D.N.Y. 2010). And, where the parties' intent is not clear from the agreement, courts treat any conditions as conditions precedent to performance. *See SCS Comm., Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 341 (2d Cir. 2004) (holding that a condition was precedent to performance because the contract

14

language did not explicitly state that it was precedent to formation); *Catskills Dev., LLC v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 704–05 (S.D.N.Y. 2001) (same); *Adams v. Suozzi*, 340 F. Supp. 2d 279, 283 (E.D.N.Y. 2004) ("The language of the contract must expressly condition the formation of an agreement on the performance of the condition."); *Garrett v. Music Pub. Co. of Am., LLC*, 740 F. Supp. 2d at 462–63 ("In cases where an express condition precedent to contract formation is found in the contract, parties typically use language making this intent clear."). Here, nothing in the agreement expresses an intent that the conditions are precedent to formation and not performance. *See SCS Comm., Inc.*, 360 F.3d at 341. Under these circumstances, the argument for dismissal is meritless.

Finally, defendants argue that, even if there were a valid contract, plaintiff's breach of contract claim should be dismissed. First, they argue that plaintiff fails to allege that the conditions precedent to defendants' obligation to perform were met. However, plaintiff sufficiently alleges that there were courses he could teach that were instead assigned to other professors. The clear implication is that the conditions were met, but that LCC chose not to assign courses to plaintiff as he claims his contract with LCC required. Defendants also argue that LCC's performance was excused by plaintiff's own failure to perform his obligation under the contract, namely, that plaintiff only began, but did not complete preparing for the course he expected to teach. This argument is rejected as nothing in the contract suggests that plaintiff had an obligation to complete preparing for an entire semester-long course before the semester began and before he was even assigned a specific course. Accordingly, plaintiff sufficiently alleges that LCC breached its contract with him.

### VI. Plaintiff's Claim of Interference with a Protected Right

15

"Threats are required to state a claim for violation of [New York City Administrative Code] § 8–107(19)." *Nieblas-Love v. New York City Housing Authority*, 165 F. Supp. 3d 51, 78 (S.D.N.Y. 2016); *accord Peralta v. Roros 940, Inc.*, 2016 WL 1389597, at *2 n.1 (E.D.N.Y. Apr. 7, 2016). Plaintiff does not allege that any threats were made against him. Accordingly, his claim that defendants interfered with a right he enjoys under the NYCHRL is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED to the extent that plaintiff's claims of retaliation and interference with a protected right are dismissed. Defendants' motion to dismiss, otherwise, is DENIED. Plaintiff's remaining claims are age discrimination claims under the ADEA, NYSHRL, and NYCHRL against the College based on the full-time position; age discrimination claims under the ADEA and NYSHRL against the College based on the Fall 2012 adjunct position; a breach of contract claim against the College; and a claim under the NYCHRL against Yearwood for aiding and abetting in the College's age discrimination in hiring for the full-time position.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: May 25, 2017
Brooklyn, New York