UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RESAT KELES,

               **Plaintiff,**

- against -

BURL YEARWOOD and
LAGUARDIA COMMUNITY COLLEGE,

               **Defendants.**
------------------------------------------------------------x

<u>OPINION AND ORDER</u>
15-cv-03880 (NG)

GERSHON, United States District Judge:

Plaintiff Resat Keles brings this action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8–101 *et seq.*, and state contract law. Plaintiff Keles alleges that defendant LaGuardia Community College ("the College") unlawfully discriminated against him based on his age in failing to hire him for a full-time faculty position and, later, in failing to assign him any courses as an adjunct professor at the College. Keles also claims that the College breached its contract with him for reappointment as an adjunct professor. Lastly, Keles bring a claim under the NYCHRL against defendant Burl Yearwood for aiding and abetting in the College's age discrimination in hiring for the full-time position.

Keles filed his initial Complaint on July 2, 2015. He filed an Amended Complaint on May 20, 2016. On August 26, 2016, defendants moved to dismiss some of the Amended Complaint's claims. At oral argument on March 29, 2017, plaintiff agreed to withdraw his employer liability claim under NYCHRL, as well as his tortious interference with contractual rights claim. On May

26, 2017, I granted defendants' motion as to the retaliation claims and the claim under the NYCHRL for interference with a protected right, and otherwise denied the motion. Defendants now move for summary judgment on all of Keles's remaining claims. For the reasons set forth below, defendants' motion is granted as to the discrimination claims and denied as to the breach of contract claim.

## FACTS

Except as otherwise noted, the facts are undisputed for purposes of this motion. As a preliminary matter, Keles has submitted an affidavit with his opposition to defendants' summary judgment motion, which defendants ask me not to consider. Under careful review of his deposition testimony, I conclude that the allegations in the affidavit are additional, and not contradictory, to his testimony and can be considered. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Keles was first appointed as an adjunct professor in the College's Natural Sciences Department ("Department") for the Fall 2009 semester. He was born on April 15, 1950, making him fifty-nine years old at that time. Between 2009 and 2012, Keles taught Physics and Astronomy at the College as an adjunct.

During the Spring 2012 semester, Keles applied for a full-time Professor of Physics position by submitting his application material online. The Search Committee ("Committee") evaluating applications for the position consisted of defendants Yearwood, who was the Chairman of the Department, and five other professors: James Frost, Olga Calderon, Jamie Nieman, Reem Jaafar, and Ian Alberts. Five of the six Committee members were then over the age of forty. Calderon had previously interviewed and hired Keles when he applied to be an adjunct professor in 2009.

The Committee received fifty-three applications for the full-time position. Based on the applicants' resumes and cover letters, the Committee members graded each applicant and recorded their recommendations on an Applicant Flow Log. Nieman ranked Keles higher than the ultimately successful candidate, John Toland. Frost, Calderon, and Alberts ranked Keles equally with Toland. As a result of the initial review, the Committee advanced Keles and nine other applicants to the interview stage.

The version of Keles's resume the Committee reviewed showed that his earliest degree was a Master of Science, which he received in 1985. Keles's resume reflects five other degrees, including a Doctor of Philosophy, which he received in 2006.

Once an applicant reached the interview stage, the most important aspect of his or her candidacy was the interview itself. The Committee evaluated candidates based on the following criteria, which the Committee weighted equally: ability to work with diverse populations, ability to establish a research program, publication in peer-reviewed journals, grant writing experience, and teaching credentials, as reflected during a ten-minute mock lecture during the interview and in prior teaching evaluations. The Committee conducted the interviews using a list of eleven questions, which were asked of each of the applicants.

Keles interviewed on April 27, 2012. At the time of his interview, he was sixty-two years old. Frost noticed that there was a difference in Keles's age as compared to the other interviewers and that Keles was the oldest applicant by at least fifteen years. Keles testified that Nieman asked him, "How do you write grants at this age?" and told him, "Your old methods don't work." Keles asserts and defendants dispute that Nieman threw a copy of one of Keles's publications, which he brought to the interview, back at him without looking at it.

The Committee members' impressions of Keles's interview were recorded in interview reports. Calderon completed her report on April 27, 2012. The other committee members completed their interview reports on May 11, 12, or 14, 2012. Regarding Keles, all of the reports indicate "Do Not Recommend." Frost originally wrote "not hire" on his interview report. Yearwood later used correction fluid to cover those words and wrote "Do Not Recommend" on the report. No issue is made of this correction.

The College ultimately hired Toland, who was younger than Keles, for the full-time faculty position. All six of the Committee members recommended Toland and evaluated him as presenting significantly better than Keles at the interview. Toland met all of the Committee's criteria, had experience writing grants, and articulated how he would establish a research program involving students. Keles described his previous research experience during his interview but did not specify how he would establish a research program involving students. Additionally, Keles did not have experience writing grants. Yearwood subsequently testified he thought Keles could learn how to write grants. Both candidates had experience teaching Physics at other colleges and had published research in peer-reviewed journals. Keles claims that his record in this regard was better than that of Toland. Both candidates claimed to have experience working with diverse populations.

The parties dispute whether Keles's previous teaching performance compared favorably with Toland's. Keles claims that his past performance was better than satisfactory, a claim that he supports with previous evaluations. Defendants maintain that Keles's teaching performance was satisfactory but not better than that, pointing to a group of prior student evaluations reflecting below average ratings and testimony that the former Department Chairman received student complaints about Keles's teaching.

4

Outside the interview context, Keles would often overhear conversations around the Department office disparaging older adjunct professors. For example, he overheard Calderon and the Department's former Chairman, disapprovingly talking about "these old adjuncts."

While Keles was in the process of applying for the full-time position, he received a letter, signed by the College's Vice President of Academic Affairs Peter Katopes, offering to reappoint him as an adjunct professor in Fall 2012. The letter, addressed to Keles, read, in relevant part:

> LaGuardia Community College intends to reappoint you as an Adjunct Professor in the Natural Sciences Department for the Fall 2012 semester. You will be paid based on an hourly rate of $107.04.... Appointments will be offered subject to sufficiency of registration, financial ability, curriculum needs and scheduling. Department chairpersons will confirm appointments upon completion of registration.... Please indicate your acceptance by signing and returning this copy of the appointment letter to Human Resources in Room E-408.

(Reappointment Letter dated April 16, 2012). Keles signed and dated the letter and returned it within two days.

As the course coordinator, Frost was responsible for assigning adjunct professors to classes in the Department. Numerous considerations factored into which prospective adjunct professors were assigned to which courses including: the adjuncts' own schedules, the sufficiency of course registration, whether the adjunct had taught the course previously, and whether past teaching performance was satisfactory. Additionally, full-time professors, by contract, had priority over adjunct professors. When a particular course had insufficient registration for a semester, it was cancelled by the Office of Academic Affairs.

On April 27, 2012, Frost emailed Keles offering him an Astronomy class to teach during the Summer 2012 semester. The same day, Keles responded that he could teach the course, listing specific dates and times he could teach. On May 23, 2012, Frost wrote to Keles, granting him the Astronomy class, but at a different time than Keles had listed he was available, and providing the

5

course code as SCP140.7880. On May 24, 2012, Keles emailed Frost indicating that he could not teach the Astronomy course because he had a schedule conflict. Keles did not teach that semester.

On May 30, 2012, Frost emailed Keles asking if he would like to be considered to teach an Introductory Physics course for the Fall 2012 semester. On May 31, 2012, Keles responded to Frost indicating acceptance of the assignment. However, the section assigned to Keles did not take place due to low enrollment. Keles asserts, but defendants dispute, that Frost knew the section would not run when he assigned it to Keles. At his deposition, Frost testified that he thought there was a slight chance the class would run when he assigned it to Keles.

On August 7, 2012, Frost emailed Keles indicating that there was a possibility a Physics I course, coded SCP231.3343, might run in Fall 2012, and asked plaintiff if he was interested in teaching the course. On August 8, 2012, Keles responded to Frost that he was interested. The same day, Frost responded to Keles that, while there was no guarantee that the course would run in Fall 2012, if it did, Keles would teach it and that he should check back in about a week. On August 13, 2012, Keles notified Frost that, upon checking himself, there were no sections open for him to teach a Physics I course under course code SCP231.3343. This course was in fact a so-called "phantom course," which is a class that is not officially listed by the registrar but is activated if there is over-enrollment in the other sections of that course. The class did not run.

In Fall 2012, Toland, Frank Wang, and Mohamed Touati taught the available Physics I classes. Toland and Wang were full-time professors. Touati, an adjunct professor, was then forty-nine years old. Frost and Michelet Jeanty taught the available Physics II classes. Frost was a full-time professor. Jeanty, an adjunct professor, was then fifty-two years old. Frost and Sm Zakirul Islam, a forty-two-year-old adjunct professor, taught the available Astronomy classes.

6

The following semester, no Physics I, Physics II, or Astronomy classes were offered for adjunct appointments.

## SUMMARY JUDGMENT STANDARD

Defendants are entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Ind. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## DISCUSSION

On this summary judgment motion, Keles's claims pursuant to the ADEA and NYSHRL are analyzed under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Dieck v. Suffolk Cty. Vanderbilt Museum*, 2011 WL 4434066, at *4 (E.D.N.Y. 2011). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Gorzynski*, 596 F.3d at 107. If the plaintiff makes the showing, the burden shifts to the defendant to "articulate 'some legitimate, nondiscriminatory reason'" for its actions. *Id.* at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802). Once the defendant satisfies its burden, plaintiff must establish a genuine issue of material fact showing defendant's reason is a mere pretext for an impermissible discriminatory motive and that a reasonable jury could conclude, by a preponderance of the evidence, that plaintiff's age was the "but-for" cause of the adverse employment action. *See Gorzynski*, 596 F.3d at 107.

The NYCHRL prohibits discrimination in hiring and conditions of employment based on a person's "actual or perceived age." N.Y.C. Admin. Code § 8-107(1). Claims brought pursuant to the NYCHRL must be considered separately and independently from federal and state law claims. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Under the NYCHRL, claims are construed "broadly in favor of discrimination plaintiffs, to the extent that such construction is reasonably possible." *Id.* (quoting *Albunio v. City of N.Y.*, 16 N.Y.3d 472, 477-78 (2011)). Nonetheless, a plaintiff alleging discrimination "still bears the

burden of showing that the conduct is *caused* by a discriminatory motive." *Id.* at 110 (emphasis added).

On a motion for summary judgment concerning claims arising under the NYCHRL, "the plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–76 (2d Cir. 2015) (citations omitted). If the defendant offers legitimate reasons, "summary judgment is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Id.* at 76 (citations and internal quotations omitted). In other words, after presenting a legitimate reason for its action, an employer is entitled to summary judgment "only if the record establishes as a matter of law that discrimination played *no* role in its actions." *Mihalik*, 715 F.3d at 110 n.8 (internal quotation and alteration omitted).

I. **Plaintiff's Claims of Discrimination by the College in Failing to Hire Him for the Full-Time Faculty Position**

   a. *ADEA and NYSHRL*

Defendants assume that Keles was within the protected group of individuals over the age of forty, 29 U.S.C. § 631, that he was qualified for the position of full-time professor, and that he experienced an adverse employment action by not being hired for the position. The final element necessary to establish a prima facie case is whether the College's decision not to hire Keles for the position occurred under circumstances giving rise to an inference of age discrimination. Defendants argue that Keles cannot establish this element because isolated comments are insufficient to establish an inference of discrimination. However, verbal comments constitute evidence of discriminatory motive when an employee demonstrates a nexus between the

9

statements and the adverse action. *See Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004).

Here, Keles points to Committee member Nieman's question, "How do you write grants at this age?" and statement, "Your old methods don't work," during the job interview as supporting an inference of age discrimination. I find that these comments are sufficient to establish a prima facie case under the ADEA. The comments were made by a decision maker, are indicative of an age bias, and occurred at the most important stage of consideration of candidates for the full-time professor position. That the comments were made by a person who was also over the age of forty does not negate an inference of discrimination. *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 55 (2d Cir. 1998) ("The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."). Additionally, I reject defendants' argument that discriminatory motives cannot be attributed to Committee members who recently made a favorable employment decision toward Keles in advancing him from the initial screening stage to the interview round. I hesitate to characterize granting Keles an interview as a favorable employment decision when he was not ultimately hired—a proposition for which defendants provide no supporting caselaw. However, even accepting that position, Keles offers an explanation for why age bias may have affected him less at the resume screening stage. Keles argues that his resume suggests that he is ten to fifteen years younger than his actual age because of the date he earned his first degree. This explanation makes it plausible to infer that the Committee members were less aware of Keles's age when reviewing his resume, which approximated the resumes of the other applicants based on the dates, but became more aware of his age during the in-person interview. That inference is still available although some of the

Committee members had previously met Keles. It remains reasonable to infer that the difference in age was more obvious when comparing candidates during in-person interviews.

Having satisfied his burden of proffering sufficient evidence to establish a prima facie case, the burden shifts to defendants to articulate a legitimate nondiscriminatory reason for not hiring Keles. "This burden is one of production only, and is not a heavy one." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 508 (S.D.N.Y. 2010). Defendants here claim that they did not hire Keles because they preferred another applicant, Toland, who presented better than Keles during the interview and who satisfied all of the Committee's hiring criteria. The parties agree that the Committee evaluated candidates based on five criteria, which were weighted equally, and that Toland satisfied all of the criteria. Keles nonetheless argues that defendants cannot meet their burden at this stage because their positive evaluation of Toland was based on age bias. Keles misunderstands the defendants' burden at this stage, which "is not to prove nondiscrimination. Instead, defendants must 'introduce evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). Here, defendants have introduced evidence which would permit the conclusion that the reason Keles was not hired was that a better candidate was available.

The burden now falls on Keles to establish a genuine issue of material fact showing defendants' reason is a mere pretext for an impermissible discriminatory motive and that a reasonable jury could conclude that Keles's age was the "but-for" reason he was not hired. Keles cannot meet this burden. Although he argues that he was the better candidate when compared with Toland, the undisputed facts show that the College was entitled to conclude otherwise. The

interview, which included a ten-minute mock lecture, was the most important stage of the application process. The Committee evaluated candidates based on five equally weighted criteria. It is undisputed that Keles did not satisfy two of the criteria; Keles had no grant writing experience, and at the interview he did not articulate a plan to establish a research program. Toland, by contrast, satisfied all of the criteria. Keles argues that the selection criteria are not reflective of the qualifications necessary to be a professor. "Determining how to evaluate a candidate's . . . record and how to weigh various factors in making a promotion decision is precisely the sort of decision in which courts do not intervene without evidence that the employer's claimed reason was 'so lacking in merit as to call into question its genuineness.'" *Fahmy v. Duane Reade, Inc.*, 2006 WL 1582084, at *7 (S.D.N.Y. June 9, 2006) (citing *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)). Here, Keles offers no evidence that the hiring criteria were meritless other than his own opinion that other hiring criteria should have been used. This is insufficient to raise a material dispute of fact as to pretext for defendants' hiring decision.

Review of each interviewer's comments about the interviews of Keles and of the successful candidate, Toland, fully supports defendants' position that the failure to hire Keles was based on legitimate non-discriminatory criteria. Plaintiff also points to his claim that there were no complaints about his prior teaching and that the defendants have treated his past teaching evaluations as satisfactory. Treating these facts as true for the purposes of the motion, review of his student evaluations and those of other candidates does not reveal a disparity so profound as to raise a question as to the legitimacy of the negative comments made about his mock lecture at the interview. Plaintiff's teaching appears to have been satisfactory but far from superlative. Finally, the inference of age-related animus that can be drawn from Neiman's comments about grant-writing is an insufficient basis for a reasonable jury, reviewing all of the facts, to find that but for

his age, Keles would have been hired. Accordingly, defendants' motion for summary judgment as to the claims under the ADEA and the NYSHRL concerning the full-time position is granted.

### b. NYCHRL

Although the NYCHRL provides a more lenient standard for the plaintiff after the defendant has offered a legitimate nondiscriminatory reason for its actions, Keles cannot meet this standard. As discussed above, defendants' stated reason for not hiring Keles is that they preferred another applicant, Toland, who met all of the Committee's hiring criteria. Keles presents no evidence that age discrimination played any role in the Committee's evaluation that Toland satisfied all of the criteria while he did not. Indeed, Keles does not dispute that he failed to satisfy two of the Committee's hiring criteria. Thus, defendants are entitled to summary judgment on the NYCHRL claim concerning the full-time position. *See Mihalik*, 715 F.3d at 110 n.8. Additionally, I grant summary judgment in favor of defendant Yearwood concerning the aiding and abetting claim because I have concluded that no violation of the NYCHRL occurred.

## II. Plaintiff's Claims of Discrimination by the College in Failing to Reappoint Him as an Adjunct Professor

### a. ADEA and NYSHRL

Keles's remaining discrimination claims allege that the College discriminated against him in failing to assign him any courses as an adjunct professor in the Fall of 2012. Defendants assume that Keles was within the protected group, that he was qualified to be reappointed, and that he experienced an adverse employment action by not being assigned any courses. Keles presents two grounds to support an inference of discrimination: the remarks by Nieman and Calderon and the assignment of younger adjunct professors to courses.[1]

---

[1] Keles also argues that the discrimination in full-time hiring is indicative of discrimination in adjunct course assignments. Having found that plaintiff cannot prove that age discrimination was

13

First, I consider the remarks. In determining whether a comment is a probative statement evidencing an intent to discriminate, a court considers the following factors: "(1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Schreiber*, 324 F. Supp. 2d at 519. The Court of Appeals for the Second Circuit, while cautioning "that none of these factors should be regarded as dispositive," has endorsed this framework as a "useful approach to the admission or exclusion of remarks not directly related to the adverse action against the plaintiff...." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010).

Nieman and Calderon had no decision-making authority concerning adjunct course assignments. Frost had this responsibility and also had conducted Keles's most recent teaching performance evaluation, which factored into the course assignment process. Nieman's and Calderon's comments, while viewable as discriminatory, did not occur in relation to Frost's assigning of courses. Additionally, the comments were not close in time to course assignments; they occurred at least months before. Thus, I conclude that these comments do not support an inference of age discrimination in adjunct course assignments.

Second, I consider whether the assignment of courses to younger adjunct professors evinces age discrimination. The courses that Keles desired to teach, Physics I, Physics II, and Astronomy, each had one section that was taught by an adjunct professor who was over the age of forty, but younger than Keles by between ten and twenty years. Defendants argue that there can

---

the but for cause of the College's decision to hire Toland instead of Keles for the full-time position, I reject this argument.

be no inference of age discrimination where the professors who were assigned classes were also in the protected class of people over the age of forty. Keles correctly counters that, because the ADEA prohibits discrimination on the basis of age and not class membership, it is irrelevant that the younger professors were over the age of forty. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). "Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination." *Id.* But here it would be incorrect to characterize Keles as "replaced." The assignment of adjuncts was a selection process; Frost considered the prospective adjuncts' schedules, the sufficiency of course registration, and past teaching performance in making assignments. Although Keles did teach each semester between Fall 2009 and Spring 2012, he did not consistently teach the same course or teach at the same times. Rather, each semester he taught a different course, sometimes teaching multiple sections, within the department. Keles introduces no evidence indicating that he was any more suitable than the adjunct professors who were selected, or indeed anything about those professors other than that they were younger than Keles. Standing alone, "the circumstances that the individuals hired were younger . . . are insufficient to resist a motion for summary judgment." *Meyer v. Shulkin*, 722 Fed. Appx. 26, 28 (2d Cir. 2018).

In any event, treating plaintiff as having met the minimal burden of making a prima facie case, the defendants have proffered a legitimate non-discriminatory reason, lack of enrollment, for Frost's conduct; and plaintiff has not produced evidence sufficient to show that that a reasonable jury could find, based on all of the evidence that the true but for cause of plaintiff not being hired as an adjunct was age discrimination. Plaintiff proffers that Frost "intentionally" offered him a class that Frost knew did not meet plaintiff's schedule and speculates about conspiratorial inferences he asks the court to draw. But the record evidence does not support his speculations.

Accordingly, I grant the defendants' motion as to the ADEA and NYSHRL claims concerning reappointment as an adjunct professor.

*a. NYCHRL*

As discussed previously, NYCHRL claims must be analyzed separately. *See Ya-Chen Chen*, 805 F.3d at 75–76. Here, Keles has failed to do show that age discrimination played a role in his not obtaining an adjunct position. Accordingly, I grant summary judgment for the defendants.

### III. Plaintiff's Breach of Contract Claim

Keles's final claim is for breach of contract concerning the letter the College extended and he accepted offering reappointment as an adjunct professor in Fall 2012. Defendants previously argued in their motion to dismiss that the Reappointment Letter could not be viewed as an enforceable contract—a position that I rejected based on the facts in the Amended Complaint. Now, defendants seemingly accept that the Reappointment Letter is a contract, but argue that it contained conditions precedent to performance, the nonoccurrence of which negated the College's obligation to perform under the contract. Specifically, they rely on the language in the Reappointment Letter that, "Appointments will be offered subject to sufficiency of registration, financial ability, curriculum needs and scheduling."

Conditions precedent are acts or events which must occur before a party is obligated to perform a promise made pursuant to an existing contact. *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (N.Y. 1995). Here, defendants assert that sufficient registration for Fall 2012 was a condition precedent to its performance that did not occur. However, this is contradicted by the undisputed fact that the College did have sufficient registration for Fall 2012 to run three classes Keles could have taught. The College simply chose

to assign those classes to other professors. Accordingly, I deny defendants' motion for summary judgment as to breach of contract.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment on the claims against the College and Yearwood under the ADEA, the NYSHRL, and the NYCHRL is GRANTED. Defendants' motion for summary judgment on the breach of contract claim is DENIED. All claims against him having been dismissed, the Clerk of Court is directed to terminate defendant Burl Yearwood as a party.

The parties are directed to submit a joint pretrial order by April 19, 2019 in accordance with my individual practices. The parties are further directed to file proposed verdict sheets, requests to charge, *voir dire* questions, and any motions *in limine* by May 20, 2019. Responses to any motions *in limine* are to be filed by June 3, 2019. A final pretrial conference and trial date will be set by the Court by separate order.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: March 20, 2019
      Brooklyn, New York